UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| PENNY L. JONES, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|   vs. | ) | 1:09-cv-45-WTL-TAB |
| | ) | |
| MICHAEL ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
|     Defendant. | ) | |

**REPORT AND RECOMMENDATION**

**I.     Introduction**

Penny Jones applied for Supplemental Security Income on May 4, 2004, alleging disability since January 1, 1991, because of below average intellectual functioning and obesity. The Social Security Administration denied Jones's application initially and on reconsideration. Administrative Law Judge Anne Rybolt held a hearing on March 28, 2007, and denied Jones benefits in a decision dated June 7, 2007.  The Appeals Council denied review on November 20, 2008.  Jones filed this action seeking judicial review.  For the following reasons, the Magistrate Judge recommends that the ALJ's decision be affirmed.

**II.    Background**

Penny Jones was born July 3, 1966.  Jones was in special education classes in grade school and completed the ninth grade.  Jones most recently worked in 2006 as a part-time cook at Conseco Fieldhouse.  [R. at 309–11.]

Jones complains of foot and back pain, but her medical history concerning these conditions is sparse.  In April 2003, she was seen in the emergency room for knee pain.  In

August 2004, Jones was five feet, seven inches tall and weighed 260 pounds. She complained that back pain was present seventy-five percent of the time, and she could only sit comfortably for three to four hours. She was able to move on and off the exam table, and her physical exam was normal. An x-ray revealed vertebral body spurs. [R. at 143.]

In August 2004, Jones was also seen for a psychological evaluation. The psychologist concluded that "[t]he claimant's Full Scale IQ of 63 indicates her intellectual level of functioning falls into the mental retardation range. . . . The claimant'[s] level of adjustment exceeds the level of functioning characteristic for mildly mentally retarded individuals." [R. at 166.] An assessment in September 2004 concluded that Jones "is capable of performing simple repetitive tasks on a sustained basis without special supervision." [R. at 160.]

In November 2004, Jones visited the emergency room complaining of lower back pain she thought was caused by moving furniture in her home. [R. at 232.] Jones was discharged with prescriptions for Ibuprofen and Vicodin. [R. at 235.]

In 2005, Jones slipped and fell on a wet floor at a gas station mini-mart and injured her foot. [R. at 317.] She contacted the gas station, explained her injury, produced her medical records, and obtained a settlement of $500. [R. at 318–19.]

In October 2006, Jones visited the emergency room complaining of shoulder pain and lower back pain. She was discharged with a prescription for Ibuprofen. [R. at 274.]

At the time of the hearing in March 2007, Jones weighed between 260 and 285 pounds. [R. at 306, 331.] Jones testified that she had back and foot pain, and that she napped a few hours each day and occasionally used Ibuprofen to relieve her back pain. [R. at 312, 314, 336.] Jones also testified that her feet would fall asleep if she sat for thirty to forty minutes. [R. at 336.]

At the time of the hearing, Jones lived with her boyfriend and cooked from scratch, cleaned the house, washed dishes, and did laundry. [R. at 307, 320–22.] Jones was able to use public transportation, and she and her boyfriend went grocery shopping together. [R. at 321.] For fun, Jones worked jigsaw puzzles and crossword puzzles, compiled scrapbooks, and fashioned Christmas wreaths from clothes hangers and colored aromatic trash bags. [R. at 323–25.] Jones also enjoyed spending time with her grandsons, ages nine and four, particularly playing card games such as blackjack and fish. [R. at 327.] Jones occasionally kept her grandsons overnight. [R. at 328.]

The ALJ called an impartial medical expert and a vocational expert. The medical expert testified that Jones had no severe impairments, and none of her impairments met or equaled a listing. [R. at 343.] The medical expert testified that Jones could sit, stand, and walk six hours per day but recommended that she not crawl or climb ladders, scaffolds, or ropes. [R. at 343–44.] The vocational expert testified that simple, repetitive jobs were available for a person who could sit, stand, and walk six hours per day but could not crawl or climb ladders, ropes, or scaffolding. [R. at 347.]

To determine whether Jones is disabled, the ALJ employed the five-step process set out at 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ determined that Jones has not engaged in substantial gainful activity since her alleged onset date. [R. at 21.] At step two, the ALJ found that Jones's below average intellectual functioning and obesity were severe impairments. At step three, the ALJ determined that Jones does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. [R. at 22.]

The ALJ next determined Jones's residual functional capacity. In a heading paragraph,

the ALJ wrote:

> the claimant retains the residual functional capacity to lift and/or carry up to twenty pounds occasionally and ten pounds frequently; to sit, stand, and/or walk for up to six hours each in an eight-hour workday. *She can occasionally climb ladders, ropes, and scaffolds and can occasionally crawl.* She can perform work which involves the frequent climbing of stairs and ramps, as well as frequent balancing, stooping, crouching, and kneeling. The claimant has no environmental restrictions. However, she can perform only simple, repetitive tasks.

[R. at 23 (emphasis added).] Under the heading, however, the ALJ wrote that Jones was prohibited from crawling and work involving ladders, ropes, and scaffolding.

At step four, the ALJ determined that Jones has no past relevant work history. Finally, at step five, the ALJ considered Jones's age, education, work experience, and residual functional capacity and determined that there are jobs in significant numbers that Jones could perform. [R. at 28.] The ALJ determined that Jones is not disabled. [R. at 29.]

**III.  Discussion**

Jones raises four challenges to the ALJ's decision: (1) the ALJ erred in using Dr. Lorber as an impartial medical expert; (2) the decision is internally inconsistent; (3) the decision wrongly disregards Jones's obesity; and (4) the ALJ erred in not calling a psychological expert to determine equivalency to a Listing.

*A.  Impartial medical expert*

First, Jones argues that the ALJ erred in using Dr. Lorber as an impartial medical expert because Dr. Lorber participated in Jones's August 23, 2004, consultative exam. [Docket No. 20 at 7.] Jones relies on section 1-2-5-32 of the Social Security Administration Hearings, Appeals, and Litigation Law Manual (HALLEX), which provides that "[t]he ALJ may not use an ME who has treated the claimant in the past. The ALJ may not use an ME who has examined the

claimant on a consultative basis." However, as the Commissioner points out, Dr. Lorber did not examine Jones; he only reviewed her x-rays. The federal regulation and cases distinguish between examining and non-examining medical experts. 20 C.F.R. § 404.1527(d)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."); *Jordan v. Astrue*, No. 1:08-cv-497-WTL-DML, 2009 WL 3053715 (S.D. Ind. 2009) (referring to a "non-examining" physician); *J.H.R. ex rel. Radford v. Astrue*, No. 1:07-cv-1584-DFH-DML, 2009 WL 692211 (S.D. Ind. 2009) (same). Because Dr. Lorber only examined Jones's x-rays, and not Jones herself, the ALJ did not err in using him as a medical expert.

  *B. Internal inconsistency*

  Second, Jones argues that remand is necessary because the ALJ's residual functional capacity determination is internally inconsistent: in one paragraph, the ALJ finds that Jones can occasionally crawl and climb ladders, ropes, and scaffolding; in the next, the ALJ states that Jones is prohibited from crawling and work involving ladders, ropes, and scaffolding. [Docket No. 20 at 8; R. at 23.] The Commissioner responds that the inconsistency does not require remand because it may have been a typographical error, and the medical evidence supports the conclusion that Jones could not crawl or climb. [Docket No. 26 at 11.]

  The ALJ's residual functional capacity determination paragraphs are obviously inconsistent. An examination of the ALJ's entire decision and the hearing transcript, however, makes it just as obvious that the ALJ applied the residual functional capacity restricting Jones from crawling and climbing ladders, ropes, and scaffolding. The ALJ's decision notes that Jones's capacity to perform the full range of light work "has been impeded by additional

limitations," and the ALJ's hypothetical to the vocational expert at the hearing specified that no crawling or work involving ladders, ropes, or scaffolds would be permitted. [R. at 347.] Because the decision makes clear that Jones cannot crawl or climb ladders, ropes, or scaffolding, the decision's internal inconsistency does not require remand.

    *C.*    *Consideration of obesity*

Third, Jones argues that the ALJ's decision must be reversed because the ALJ improperly disregarded the effect of Jones's obesity on her ability to work. Jones argues that her obesity, combined with her mental impairment, satisfied Listing 12.05(C) and requires a finding of disabled. [Docket No. 20 at 10.]

> Listing 12.05, "Mental retardation," provides:
>
> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

In order for Listing 12.05(C) to be satisfied, both the criteria in paragraph C and the diagnostic description in the introductory paragraph must be met. 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.00.

Jones focuses her argument on the possibility that she meets paragraph C of the Listing because the ALJ found her obesity to be "severe," which necessarily means it imposes significant work-related limitations. But Jones does not explain how she meets the diagnostic description in the introductory paragraph—specifically its requirement of "deficits in adaptive

6

functioning," or the inability to cope with the challenges of ordinary everyday life. *Novy v. Astrue*, 497 F.3d 708, 710 (7th Cir. 2007). The record shows that Jones was able to cope with the challenges of ordinary everyday life—she held a job as a deep fryer cook, lived with her boyfriend, rode the city bus, did household shopping, prepared meals from scratch, baked, cleaned her apartment, fashioned wreaths from clothes hangers and aromatic colored trash bags, worked jigsaw puzzles, and compiled scrapbooks. Particularly significant was evidence that her grandchildren visited regularly, including for overnight visits, and that she had negotiated a personal injury settlement for herself after slipping on a wet gas station floor. The ALJ found that Jones's "activities of daily living reflect a kind and degree typical of many non-disabled households." [R. at 25.] Even if Jones's obesity is a severe limitation that significantly limits her ability to work, she does not meet Listing 12.05(C) because she has not established a deficit in adaptive functioning as required by the opening paragraph of that Listing. The ALJ did not improperly evaluate Jones's obesity.

   D.    *Lack of psychological expert*

Finally, Jones argues that the ALJ erred in not calling a psychological expert to determine whether Jones's mental impairment equaled a listing. [Docket No. 20 at 13.] The Commissioner responds that the record contained medical evidence from which the ALJ could determine that Jones did not meet or medically equal Listing 12.05(C). [Docket No. 26 at 16–17.]

The responsibility for deciding medical equivalence rests with the ALJ. 20 C.F.R. § 404.1526(e); Social Security Ruling 96-6p. When necessary, an ALJ must summon a medical expert to provide an informed basis for determining whether the claimant is disabled. *Green v.*

*Apfel*, 204 F.3d 780, 781 (7th Cir. 2000) (citations omitted). Here, the ALJ considered the medical evidence and made findings based on the record, particularly Dr. Kladder's opinion that Jones's "level of adjustment exceeds the level of functioning expected of those with similar IQ scores," and the observations that Jones takes care of personal hygiene, cleans, washes dishes, takes out trash, buys her own groceries, cooks her own meals, manages her finances, uses public transportation without difficulty, cares for her grandchildren, has a boyfriend and other friends, and completes forms adequately and without help. [R. at 160.] The ALJ properly relied on Dr. Kladder's opinion in finding that Jones did not equal Listing 12.05(C) and was not required to summon a psychological expert.

## IV. Conclusion

For the reasons set forth above, the Magistrate Judge recommends that the ALJ's decision be affirmed. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1), and failure to file timely objections within the fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Dated: 01/06/2010

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov